| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
| WILSON ALEJANDRO MEJIA-VELEZ,<br><br>Petitioner,<br><br>– against –<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | **ORDER APPOINTING AMICUS CURIAE**<br><br>13-CV-03372 (ERK) |

KORMAN, *J.*

On March 11, 1992, Manuel de Dios, a journalist and editor of what was then New York's largest Spanish daily publication, was shot in the head and murdered as he sat having a drink at a Queens, New York restaurant. The evidence at trial revealed that de Dios was killed at the insistence of the "Cali Cartel," an association of crime families based in Cali, Colombia, that deal in narcotics. Because of his scathing exposes on the inner workings of the cartel, de Dios was singled out for execution. Petitioner, Wilson Alejandro Mejia-Velez—who was then seventeen years old—committed the murder, and was convicted after a jury trial of murder for hire. *See* 18 U.S.C. § 1958. On March 16, 1994, I sentenced the petitioner to life in prison. *United States v. Mejia-Velez* (*Mejia-Velez I*), No. 1:92-cr-00963-ERK-2 (E.D.N.Y.).

The petition for a writ of habeas corpus is based on the Supreme Court's holding in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), that the Eighth Amendment forbids a sentencing scheme that mandates life imprisonment without parole for crimes committed when the defendant was under the age of eighteen. Subsequently, in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), the

Supreme Court held that *Miller* applied retroactively. Pursuant to these holdings, petitioner seeks to be resentenced. Petitioner, however, was not convicted under a statute that carried a mandatory life sentence. Instead, the Sentencing Guidelines then applicable to a violation of § 1958 provided an offense level sufficient on its own to produce a sentencing range of life imprisonment. *See* U.S.S.G. §§ 2A1.1, 2E1.4 (1993). While the application of the Guidelines was then mandatory in the sense that they had to be used to calculate the sentence to be imposed, the Sentencing Reform Act "did not eliminate all of the district court's discretion . . . . Acknowledging the wisdom, even the necessity, of sentencing procedures that take into account individual circumstances, Congress allow[ed] district courts to depart from the applicable Guideline range if 'the court f[ound] that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" *Koon v. United States*, 518 U.S. 81, 92 (1996) (quoting 18 U.S.C. § 3553(b)) (citations omitted). Indeed, in *United States v. Soto*—a murder case in which the base offense level was 45, and the Guidelines custody term was life—I departed downward, and imposed a sentence of 292 months (or 24 and a third years). No. 1:98-cr-00845-ERK-1, ECF. No. 70 (E.D.N.Y. Oct. 22, 1999).

At the time of petitioner's sentencing, the Guidelines discouraged, but did not disallow, downward departures based on age. Specifically, § 5H1.1 (1993) provided that "[a]ge (including youth) is not <u>ordinarily</u> relevant in determining whether a sentence should be outside the applicable guideline range." (emphasis added). This policy statement did not preclude altogether a downward departure based on age. As one commentator observed, "[a]lways keep in mind that whenever the Sentencing Commission uses the term 'not ordinarily relevant,' it leaves the door open for departure arguments . . . when it can be shown that a given factor is present to an unusual or

extraordinary degree." TONY GAROPPOLO, THE SENTENCING REFORM ACT: A GUIDE FOR DEFENSE COUNSEL 131 (3d ed. 2003). In fact, in 2010, the Guidelines were amended to include almost that exact language. *See* U.S. SENTENCING GUIDELINES MANUAL app. C, vol. III, at 348 (Amendment 739). Section 5H1.1 now provides that "[a]ge (including youth) may be relevant in determining whether a departure is warranted, if considerations based on age . . . are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."[1]

Certainly some or all of the considerations underlying the holding in *Miller*, *see* 132 S. Ct. at 2464–65, 2468, could have provided a basis for a downward departure when the petitioner was sentenced, if I had chosen to do so—as the United States Attorney has conceded, Tr. of Oral Arg. 12:8–16, ECF No. 13. Indeed, at petitioner's sentencing, after acknowledging that "the sentence in this case is mandatory life under the Guidelines," his attorney moved for a downward departure based in part on the defendant's youth, because he would be more vulnerable in prison, *Mejia-Velez I*, Sentencing Tr. 3:12–18, ECF No. 171, and would serve more years under a life sentence than would somebody considerably older, *id.* at 4:23–5:10.[2] While I declined to depart downward, I did not do so on the grounds that the Guidelines categorically forbade it.

---

[1] I also note § 5H1.12 (2016) provides that "[l]ack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds in determining whether a departure is warranted." This statement of policy became effective November 1, 1992, so even if it had some arguable relevance here (which I doubt), it could not have affected the petitioner's sentence because he committed the offense of conviction prior to that date.

[2] I sentenced the petitioner without the benefit of a presentence report, pursuant to Fed. R. Crim. P. 31(c)(1), after finding that "there is sufficient information in the record to enable a meaningful exercise of . . . sentencing authority pursuant to 18 U.S.C. § 3553 because of the matters and materials that were brought to my attention during the course of the proceedings to determine whether the defendant should be treated as an adult or as a juvenile . . . [, and] the evidence that I[] heard at trial." *Mejia-Velez I*, Sentencing Tr. 5:23–6:10, ECF No. 171. The evidence at trial included testimony by the petitioner's two accomplices that they recruited him because he had told them that he had committed other homicides in Colombia, *Mejia-Velez I*, 855 F. Supp. 607, 610–11 (E.D.N.Y. 1994), and the evidence at the juvenile status proceeding included testimony by a psychologist (called by the petitioner) that given the nature of the offense—a remorseless act of murder done for financial gain—the "prospects for rehabilitation [were] dim." *Mejia-Velez I*, Oct. 7, 1993 Trial Tr. 24:19–25:3, *available at Mejia Velez II* ECF No. 17.

Under these circumstances, the issue presented by this case is whether or not the imposition of a life sentence was mandatory in the manner contemplated by *Miller*, and must therefore be vacated. The United States Attorney agrees that the petitioner's sentence must be reopened under *Miller*. In the face of this default, and mindful of the importance of the question at hand, I appoint Andrew L. Frey as *amicus curiae* to brief and argue the position that the petitioner is not entitled to resentencing under *Miller* and *Montgomery*. Mr. Frey is a partner in the law firm of Mayer Brown. Before entering private practice, he served for thirteen years in the Office of the Solicitor General of the United States. He has argued 66 cases in the United States Supreme Court, and countless others in the federal courts of appeals and state supreme courts. Mr. Frey is one of the ablest and most experienced appellate advocates in the United States. I have no doubt that he will ably discharge his appointed responsibilities.

My case manager will contact the parties to arrange for a telephone conference for the purpose of setting a briefing and argument schedule.

**SO ORDERED.**

Brooklyn, New York
November 18, 2016

*Edward R. Korman*
Edward R. Korman
United States District Judge